IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DEBRA D. HANIGAN, *individually, and as a representative of a Class of Participants and Beneficiaries of the Bechtel Trust and Thrift Plan*, | )<br>)<br>)<br>) |
| Plaintiff, | ) Civil Action No. 1:24-cv-00875 (AJT/LRV) <br>) <br>) |
| v. | )<br>) |
| BECHTEL GLOBAL CORPORATION, *et al.*, | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Defendant Bechtel Global Corporation, Defendant Bechtel Global Corporation's Board of Directors, and Bechtel Trust & Thrift Plan Committee (collectively the "Defendants") have filed a Motion to Dismiss Plaintiff's Second Amended Complaint, [Doc. No. 58] (the "Motion"). For the reasons stated below, the Motion is **GRANTED** and Plaintiff's Second Amended Complaint is **DISMISSED.**

### I. BACKGROUND

Plaintiff alleges the following in her Second Amended Complaint:[1]

Defendant Bechtel Global Corporation ("Bechtel") is an engineering, procurement, construction, and project management company headquartered in Reston, Virginia. [Doc. No. 48] ¶ 12. Bechtel and its Board of Directors ("Board of Directors") sponsor the Bechtel Trust & Thrift

---

[1] The Defendants attached nine exhibits to the Motion. Eight of these exhibits are either integral to or incorporated by reference into the Complaint and were considered by the Court. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, exhibit three does not appear to be integral to or incorporated by reference into the Complaint, and the Court therefore has not considered that exhibit in its decision.

1

Plan ("the Plan"), a 401(k) retirement plan provided to Bechtel's employees. *Id.* ¶¶ 16-17. The Bechtel Trust & Thrift Plan Committee administers the Plan ("the Plan Committee"). *Id.* ¶¶ 13, 18. In 2023, the Plan had 16,145 participants and $5,692,074 in assets, making it larger than over 99.90% of all defined contribution plans in the United States. *Id.* ¶ 15.

If an employee does not make investment decisions themselves, an employer can select a qualified default investment alternative ("QDIA"), which is an automatic enrollment investment plan. *Id.* ¶¶ 23, 26. The Department of Labor permits an employer to choose whether it wants to offer a managed account ("MA"), target-date fund ("TDF"), or balanced fund as its QDIA. *Id.* ¶¶ 26, 28. At Bechtel, the selected QDIA is a MA titled the Professional Management Program (the "MA PMP"). *Id.* ¶ 21.

Plaintiff Debra A. Hanigan ("Hanigan") is a Plan participant. *Id.* ¶ 20. Hanigan worked for Bechtel in four different roles from October 2003 through July 2023 until her retirement. *Id.* ¶¶ 5-6. Hanigan was automatically defaulted in the MA PMP program from 2018 to 2020 and during 2022. *Id.* ¶ 56.

Hanigan alleges that Bechtel breached its fiduciary duties to Plan participants by selecting the MA PMP as Bechtel's QDIA. As of February 2024, approximately 63% of Bechtel's Plan participants were enrolled in the MA PMP. *Id.* ¶¶ 35, 51. From 2018 to 2023, the MA PMP participants paid an average of approximately $940 per year in investment, administrative, and recordkeeping fees.[2] *Id.* at 14. Approximately 65% of Plan participants do not provide any personalized information to influence the asset allocation. *Id.* ¶ 60.

---

[2] The MA PMP investment fee is calculated in a tiered structure: 0.27% fee applies to amounts between $0 and $100,000; 0.20% fee applies to amounts between $101,000 and $250,000; 0.10% fee applies to amounts between $250,001 and above. *Id.* ¶ 49. In 2023, the average total investment fee for the MA PMP was 0.23%. *Id.*

2

Hanigan alleges that the Defendants should have selected a TDF as its QDIA. TDFs are by far the most common QDIA with 96% of all QDIA selections being a TDF. *Id.* ¶ 53. According to the Second Amended Complaint, TDFs are significantly cheaper and provide a similar asset allocation to the MA PMP plan where plan participants do not provide personalized information to guide the asset allocation. *Id.* ¶¶ 32, 79. On average, Hanigan alleges that the fees associated with a TDF are, on average, $458 cheaper per year than the MA PMP. *Id.* at 13; *see also id.* ¶ 74. Hanigan alleges that the MA PMP also receives worse returns on investment than a TDF. As an example, Hanigan describes that a T. Rowe Price TDF received 7.47% return on investment for 5-years and 8.91% for 10-years. *Id.* ¶ 77. Meanwhile, the MA PMP account provided an average return of 6.50% for 5-years and 7.83% for 10-years. *Id.*

Hanigan filed this class action complaint alleging two claims under the Employee Retirement Income Security Act ("ERISA"): (1) breach of the duty of prudence for excessive fees and (2) breach of the duty to adequately monitor investments. *Id.* at 21-22. Hanigan brings this Second Amended Complaint and seeks to certify a class of approximately 7,000 Plan members who were defaulted into the MA PMP and provided no personalized information from May 24, 2018 through the date of judgment. *Id.* ¶¶ 90-91.

## II. STANDARD OF REVIEW

A complaint must state "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). When considering a motion to dismiss, the court must construe all reasonable inferences in favor of the plaintiff and accept all well-pled facts as true. *Hall. v. DirectTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). If a complaint "state[s] a claim to relief that is plausible on its face," then a court should deny the motion to dismiss. *See Robertson v. Sea*

*Pines Real Est. Co.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III. DISCUSSION

A. Count I: Breach of the Duty of Prudence

The duty of prudence requires fiduciaries to act with the care, skill, prudence, and diligence of a reasonably prudent person. *Reetz v. Aon Hewitt Inv. Consulting, Inc.*, 74 F.4th 171, 182 (4th Cir. 2023) (quoting 29 U.S.C. § 1104). To state a viable claim of breach of the duty of prudence under ERISA, a plaintiff must plead either "direct facts demonstrating a deficient fiduciary process or circumstantial facts allowing a plausible inference that the fiduciaries' decision was outside of the 'range of reasonable judgments a fiduciary may make based on her experience and expertise.'" *Tullgren v. Hamilton*, No. 1:22-cv-856, 2023 WL 2307615, at *4 (E.D. Va. Mar. 1, 2023) (citing *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718–19 (2d Cir. 2013)).

Where a claim alleges excessive fees, the plaintiff must also plead a "meaningful benchmark" that plausibly supports that the challenged fee is excessive in relation to other similar services. *Naylor v. BAE Sys.*, No. 1:24-cv-00536, 1:24-cv-536, 2024 WL 4112322, at *7 (E.D. Va. Sept. 5, 2024). Where the challenge involves investment funds, the comparator funds must have "similar investment strategies to the challenged fund" and funds with "distinct strategies" do not provide a plausible meaningful benchmark. *Tullgren*, 2023 WL 2307615, at *5–7; *see also Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 281 (8th Cir. 2022) (determining comparator funds are "unlikely to be 'sound' or 'meaningful'" if they do not "hold similar securities, have similar investment strategies, [or] reflect a similar risk profile" (citations omitted)).

The Second Amended Complaint again fails to allege a meaningful benchmark to support Hanigan's excessive fee claim. A TDF is a "product with mixed investments that takes into account the individual's age, target retirement date or life expectancy" to create the asset allocation. [Doc. No. 48] ¶¶ 31-32. Hanigan summarily alleges that where a participant does not provide personalized information, the MA PMP only considers "age and target retirement date/life expectancy." *Id.* ¶ 30.[3] However, Hanigan's Second Amended Complaint does not contain any allegation that the asset allocation models for the MA PMP are comparable to a TDF plan. The differences between a TDF and MA PMP are further underscored by exhibit five, expressly relied on in the Complaint, which demonstrates that the MA PMP asset allocation considers factors that a TDF does not, including risk tolerance; account balance; outside assets and pension wealth; gender; salary; savings rule; pension compensation; and social security income, [Doc. No. 60-5] at 8-9; *see also* [Doc. No. 60-4] at 19. The MA PMP is an actively managed fund, "us[ing] financial models and research to create and monitor an investment strategy" for each Plan participant through the direction of an investment professional. [Doc. No. 60-1] at 9. In short, it appears from the information properly considered with respect to respective plans, that the PMP plan engages in a level of asset allocation and management not present in a TDF; and Hanigan has not made any factual allegations that demonstrate that the asset allocation and investment management between a TDF and MA PMP is sufficiently similar to plausibly allege that a TDF is a meaningful benchmark to support her first claim.[4] *See Naylor*, 2024 WL 4112322, at *8 ("The Vanguard funds,

---

[3] Hanigan's theory that participant participation is required for an MA to be a proper selection is also inconsistent with Department of Labor's QDIA regulations, which expressly permits employers to select an MA as a QDIA "in the absence of an investment election by the participant." 29 C.F.R. § 2550.404c-5(a)(1).

[4] This point is underscored based on the different returns on investment experienced by the TDF and MA PMP during various time periods. For example, as alleged by Hanigan, the return rate for a Financial Engines management account was 6.50% and 7.83% for a 5-year and 10-year period respectively, [Doc. No. 48] ¶ 77, as compared to TDFs, which had a 5-year and 10 year return of 7.57% and 8.53% respectively, *id.*, but other time periods show that the MA PMP had a higher return on investment. *See* [Doc. No. 60-4] at 24-25.

as target-date funds, are not comparable to managed-account services like the PMP."); *Kendell v. Pharm. Prod. Dev., LLC*, No. 7:20-CV-71-D, 2021 WL 1231415, at *9 (E.D.N.C. Mar. 31, 2024) ("Comparing actively-and passively-managed funds is like '[c]omparing apples and oranges' and cannot create a meaningful benchmark."). Nor does the fact that some of the participants did not provide personalized information change this analysis. For these reasons, dismissal of Hanigan's claim for breach of the duty of prudence is proper.

B. Count II: Failure to Monitor

Because Hanigan has not plausibly alleged another breach of fiduciary duty, the failure to monitor claim must also be dismissed. *See In re Constellation Energy Grp., Inc.*, 738 F. Supp. 2d 602, 614 (D. Md. 2010).

## IV. CONCLUSION

For the above reasons, it is hereby

**ORDERED** that the Motion to Dismiss, [Doc. No. 58], is **GRANTED**, and the Plaintiff's Second Amended Complaint shall be, and the same hereby is, **DISMISSED**; and it is further

**ORDERED** that the Plaintiff's Motion to Certify Class, [Doc. No. 53], be, and the same hereby is, **DENIED** as **MOOT**.

The Clerk is directed, pursuant to Federal Rule of Civil Procedure 58, to enter final judgment in favor of Defendants; to send a copy of the Memorandum Opinion and Order to all counsel of record; and to close this civil action.

January 10, 2025
Alexandria, Virginia

Anthony J. Trenga
Senior U.S. District Judge

6